**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JESUS GALLOSA-ZAPATA,<br>Petitioner,<br>v.<br>WARDEN, ADELANTO ICE PROCESSING CENTER, et al.,<br>Respondents. | NO. EDCV 26-4213-AS<br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

On July 28, 2026, Jesus Gallosa-Zapata ("Petitioner"), an immigration detainee proceeding through counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition") with the Declarations of Ramanujan Nadadur ("Nadadur Decl.") and Jesus Gallosa-Zapata ("Gallosa-Zapata Decl.") against: the Warden of the United States Immigration and Customs Enforcement ("ICE") Processing Center in Adelanto, California; Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"); and United States Attorney General Todd Blanche (collectively "Respondents"). (Docket ("Dkt.")

No. 1). The Petition alleges Petitioner was denied due process of law when he was re-detained without notice or an opportunity to be heard. (Petition, ¶¶ 22-30). Petitioner seeks his immediate release from custody. (Petition at 9).

On August 4, 2026, Respondents filed a Response to the Petition stating "Petitioner appears to be entitled to request and receive an initial bond hearing pursuant to *Rodriguez Vazquez v. Bostock*, __ F.4th __, 2026 WL 2196424 (9th Cir. 2026)[.]" (Dkt. No. 8). Petitioner filed a Reply on August 4, 2026. (Dkt. No. 9). The parties have consented to proceed before the undersigned Magistrate Judge in this matter. (See Dkt. Nos. 3, 6).

For the reasons discussed below, the Petition is GRANTED and Petitioner is ordered immediately released from custody subject to the conditions, if any, of his most recent order of supervision.

## II.

## BACKGROUND

Petitioner is a native and citizen of Peru who entered the United States in or around August 2023. (Petition, ¶ 1; Gallosa-Zapata Decl., ¶ 2). After being detained at the United States-Mexico border, Petitioner sought asylum because of his fear of returning to Peru. (Petition, ¶ 1; Gallosa-Zapata Decl., ¶¶ 3-5).

On August 18, 2023, DHS served Petitioner with a Notice to Appear, charging him with removability under INA § 212(a)(6)(A)(i), 8 U.S.C. §

1182(a)(6)(A)(i), as a noncitizen present in the United States without being admitted or paroled, and under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an immigrant who is not in possession of a valid unexpired visa and passport, or other required entry or travel documentation, at the time of application for admission. (Petition, ¶ 1; Nadadur Decl., ¶ 3, Exh. B).

On August 30, 2023, Petitioner was paroled into the United States. (Petition, ¶ 2; Nadadur Decl., ¶ 4, Exh. C; Gallosa-Zapata Decl., ¶ 3; Response, Exh. A). Petitioner eventually moved to Los Angeles to help his sister. (Petition, ¶ 3; Gallosa-Zapata Decl., ¶ 7). The ICE officer assigned to Petitioner's case approved the move, Petitioner filed a change of address form with ICE listing his address in Sylmar, California, informed the Immigration Court of his move when he appeared by video for removal proceedings in Dallas, Texas, and emailed his new address to his assigned ICE officer. (Id.).

Nevertheless, after moving to Los Angeles, Petitioner did not receive any further correspondence from ICE regarding future court hearings or check-ins. (Petition, ¶ 4; Gallosa-Zapata Decl., ¶ 8). Around February 10, 2026, Petitioner's brother helped Petitioner, who is not fluent in English and did not then have an attorney, check his case online, which is how Petitioner discovered he had been ordered removed in absentia following a hearing in Van Nuys on February 5, 2026. (Petition, ¶ 5; Gallosa-Zapata Decl., ¶¶ 9, 11).

In June 2026, after local law enforcement arrested Petitioner, ICE detained Petitioner without prior notice or a hearing. (Petition, ¶ 6;

Gallosa-Zapata Decl., ¶ 10). Petitioner explains he was arrested for driving his own car, which he had previously reported stolen because he could not locate it. (Petition, ¶ 7; Gallosa-Zapata Decl., ¶ 10). However, Respondents state the Burbank Police Department arrested Petitioner for possession of a controlled substance, and ICE detained Petitioner when he was released from the Burbank jail. (Response, Exh. A).

On or around July 11, 2026, Petitioner, through counsel, filed a motion to reopen and rescind the in absentia order based on lack of notice, which stayed the removal order. (Petition, ¶ 5; Nadadur Decl., ¶ 6, Exh. E); 8 U.S.C. § 1229a(b)(5)(C); 8 C.F.R. § 1003.23(b)(4)(ii). The motion remains pending before the IJ. (Petition, ¶ 5). Petitioner remains detained in ICE custody. (Petition, ¶ 9).

**III.**

**DISCUSSION**

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." Hernandez v. Sessions, 872 F.3d 976, 990 (9th Cir. 2017); Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693; Hernandez, 872 F.3d at 990; see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings."

(quoting Reno v. Flores, 507 U.S. 292, 306 (1993))). "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690; Hernandez, 872 F.3d at 990. "'Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.'" Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1162 (C.D. Cal. 2025) (quoting Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)); see also Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("[T]he fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."), appeal dismissed by, 2021 WL 1590193 (9th Cir. 2021).

Petitioner claims he was denied due process of law when ICE re-detained him without notice or a pre-deprivation hearing. (Petition, ¶¶ 22-30).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). Courts examine procedural due process claims in "two steps." Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989); Vasquez v. Rackauckas, 734 F.3d 1025, 1042 (9th Cir. 2013). First, courts consider whether the petitioner was deprived of a constitutionally protected liberty interest, and second "whether that deprivation was

accompanied by sufficient procedural protections." Johnson v. Ryan, 55 F.4th 1167, 1179 (9th Cir. 2022); Thompson, 490 U.S. at 460.

"Petitioner has a substantial private interest in remaining out of immigration custody. As a noncitizen residing within the United States, Petitioner is entitled to constitutional due process." Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 878 (C.D. Cal. 2026); Martinez v. Noem, 821 F. Supp. 3d 1183, 1190 (C.D. Cal. 2026). Moreover, it is undisputed that Petitioner was paroled into the United States on August 30, 2023, and remained free for over two years before ICE arrested him. (Petition, ¶¶ 2, 6; Nadadur Decl., ¶ 4, Exh. C; Gallosa-Zapata Decl., ¶¶ 3, 10; Response, Exh. A). "Petitioner's release . . . gave rise to 'the most elemental of liberty interests – the interest in being free from physical detention by one's own government.'" Martinez, 821 F. Supp. 3d at 1190 (quoting Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004)); Medrano-Rocha, 817 F. Supp. 3d at 878; see also Foucha v. Louisiana, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."); M.R. v. Chestnut, 827 F. Supp. 3d 1348, 1355 (E.D. Cal. 2026) ("Petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest."); Chavarriaga Rojas v. Albarran, 826 F. Supp. 3d 1155, 1165 (N.D. Cal. 2025) ("Courts in this district consistently hold that when a noncitizen is released pending civil removal proceedings, the noncitizen has a protected liberty interest in remaining out of immigration custody."); Pinchi, 792 F. Supp. 3d at 1032 ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that

individual is released from custody she has a protected liberty interest in remaining out of custody.”).

Petitioner’s release into the United States also created “an implicit promise” liberty would be revoked only for failing to comply with the conditions of release. Morrissey v. Brewer, 408 U.S. 471, 482 (1972); Martinez, 821 F. Supp. 3d at 1191; Medrano-Rocha, 817 F. Supp. 3d at 878; Chavarriaga Rojas, 826 F. Supp. 3d at 1165. Thus, “Petitioner establishes a significant liberty interest in remaining out of immigration custody.” Martinez, 821 F. Supp. 3d at 1191; Medrano-Rocha, 817 F. Supp. 3d at 878; Pinchi, 792 F. Supp. 3d at 1032-33.

Having determined Petitioner has a protected liberty interest in remaining out of custody, the Court applies the three-part test established in Mathews to determine whether the government’s procedures were constitutionally sufficient. Under Mathews, courts consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335; Rodriguez Diaz v. Garland, 53 F.4th 1189, 1207 (9th Cir. 2022); Hernandez, 872 F.3d at 993.

As to the first factor, as explained, Petitioner has a significant interest in remaining out of custody given his release and the extensive time he has spent out of custody. Morrissey, 408 U.S. at 482; Martinez, 821 F. Supp. 3d at 1190-91; Medrano-Rocha, 817 F. Supp. 3d at 878; Pinchi, 792 F. Supp. 3d at 1032-35; see also Hernandez, 872 F.3d at 993 ("As to the first [Mathews] factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.' That is beyond dispute." (citation omitted)); Meneses, 811 F. Supp. 3d at 1163 ("Petitioner has a substantial private interest in remaining in his home, providing for his family, and participating in the community, all out of custody."); Doe v. Becerra, 787 F. Supp. 3d 1083, 1093-94 (E.D. Cal. 2025) ("It cannot be gainsaid that Petitioner has a substantial private interest in maintaining his out-of-custody status. . . . The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Accordingly, the first Mathews factor favors Petitioner.

As to the second factor, it is undisputed that, despite his protected liberty interest, Petitioner was detained without notice and a pre-detention hearing. (Petition, ¶ 6; Gallosa-Zapata Decl., ¶ 10). Under these circumstances, there is a high risk of erroneous deprivation of liberty. See Martinez, 821 F. Supp. 3d at 1191 ("[T]he risk of erroneous deprivation is significant without a pre-detention hearing."); Meneses, 811 F. Supp. 3d at 1164 ("There is an unacceptably high risk that the government would erroneously deprive Petitioner of his liberty interest absent a pre-detention hearing."); Duong v.

Kaiser, 800 F. Supp. 3d 1030, 1040 (N.D. Cal. 2025) ("The government's unilateral determination that re-detention is warranted is far less likely to be correct than the decision reached by a neutral adjudicator in a bond hearing."); Pinchi, 792 F. Supp. 3d at 1035 ("[I]t is clear that there is a significant risk that the government will erroneously deprive Ms. Garro of that liberty interest if it does not provide her with a pre-detention hearing. Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor Ms. Garro Pinchi has had an opportunity to determine whether there is any valid basis for her detention."); Torres Ferrera v. Scott, 2026 WL 776145, *5 (W.D. Wash. 2026) ("Where a person with a protected liberty interest is provided no process at all to contest its deprivation, due process cannot be satisfied. Put differently, no process can never equal due process. The risk of erroneous deprivation will always be unacceptably high where no process is provided. . . ."); G.S. v. Hermosillo, 2026 WL 179962, *3 (W.D. Wash. 2026) ("the absence of pre-deprivation procedures created an unacceptably high risk of erroneous deprivation"). Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690; Martinez, 821 F. Supp. 3d at 1191. Yet, Petitioner's initial release from ICE custody "reflected a determination by the government that [he] was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless [he] no longer meets those criteria." Pinchi, 792 F. Supp. 3d at 1034; see also Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("The federal government sometimes releases noncitizens on bond or

parole while their removal proceedings are pending. Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."), affirmed by, 905 F.3d 1137 (9th Cir. 2018); Venega-Maltez v. Semaia, 2026 WL 846035, *7 (C.D. Cal. 2026) ("Petitioner was released upon his entry into the United States, which reflected a finding that he was not a flight risk or danger to the community."). Accordingly, the second Mathews factor favors Petitioner.

Regarding the third factor, "the government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore v. Kim, 538 U.S. 510, 518 (2003)). "However, the key government interest at stake here 'is not the continued detention of Petitioner, but the government's ability to detain him without [notice and a pre-detention] hearing[,]'"[1] Singh v. Semaia, 2026 WL 1611896, *5 (C.D. Cal. 2026) (quoting Zagal-Alcaraz v. ICE Field Office, 2020 WL 1862254, *7 (D. Or.), report and recommendation adopted by, 2020 WL 1855189 (D. Or. 2020)); see also Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019) ("[T]he Court notes that the governmental issue at stake in this motion is the ability to detain Petitioner without providing him with another bond hearing, not whether the government may continue to detain him." (italics omitted)), appeal dismissed by, 2019 WL 4855033

---

[1] "[D]etention for its own sake is not a legitimate governmental interest." Claros v. Albarran, 811 F. Supp. 3d 1062, 1070 (N.D. Cal. 2025); see also Pinchi, 792 F. Supp. 3d at 1036 ("Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest.").

(9th Cir. 2019), and as many courts have recognized, "there is no meaningful countervailing government interest that supports detaining previously [released] noncitizens like [P]etitioner without a pre-detention hearing." Meneses, 811 F. Supp. 3d at 1164; Martinez, 821 F. Supp. 3d at 1192; see also Pinchi, 792 F. Supp. 3d at 1036 ("[T]here is no countervailing government interest — the third and final *Mathews* factor — that supports conducting a bond hearing only after Ms. Garro Pinchi has been detained, rather than in advance thereof."); Doe, 787 F. Supp. 3d at 1094 ("The final *Mathews* factor is simple as the Government's interest in placing Petitioner in detention without a hearing is low."); Ortega, 415 F. Supp. 3d at 970 ("[T]he government's interest in re-arresting Ortega without a hearing before an IJ is low."); Van Nguyen v. Bondi, 818 F. Supp. 3d 1235, 1242 (W.D. Wash. 2026) ("[T]he government's interest in arresting and detaining a noncitizen without a hearing is low where the noncitizen was already released because the government had been persuaded he would not pose a flight risk or a danger to the community."). Indeed, "[t]he efficiency burden entailed by a bond hearing would be minimal. As other courts have observed, bond hearings require little expenditure of resources." Duong, 800 F. Supp. 3d at 1040; see also Martinez, 821 F. Supp. 3d at 1192 ("[C]ustody hearings in immigration court are 'routine' and impose only a 'minimal' cost." (citations omitted)). Thus, the third Mathews factor favors Petitioner.

Therefore, applying the Mathews factors, Petitioner was denied due process of law when he was detained without notice and a pre-detention

hearing.[2] See Zinermon v. Burch, 494 U.S. 113, 127 (1990) (Applying Mathews, "the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property."); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant [liberty or] property interest.'" (citations and italics omitted)); Ordonez v. Mullin, 2026 WL 1630411, *4 (C.D. Cal. 2026) ("Because each of the *Mathews* factors favors Petitioners' bid for pre-deprivation process, the Court finds that Petitioners' detention — which was accompanied by *no* process — violates the Due Process Clause." (italics in original)); Torres Ferrera, 2026 WL 776145 at *5 ("Because

---

[2] Respondents assert Petitioner is properly detained because of his June 11, 2026 arrest for possession of a controlled substance. (Response at 2). But "the fact 'that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.'" Ramirez Tesara v. Wamsley, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) (quoting E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025)). "Indeed, courts have found that a pre-deprivation hearing is still required where the petitioner is initially arrested by local law enforcement and then transferred to ICE custody" or detained by ICE upon his release from local law enforcement custody. Frias Lozada v. Warden, Cal. City Det. Facility, 2026 WL 2280953, *4 (E.D. Cal. 2026); Duque Mancera v. Warden of the Desert View Facility, 2026 WL 1764919, *4 (C.D. Cal. 2026); see also Kandola v. Warden, Cal. City Det. Facility, 2026 WL 1243464, *2 (E.D. Cal.) ("Petitioner's . . . re-detention immediately upon release from jail does not diminish [his] liberty interest."), report and recommendation adopted by, 2026 WL 1363087 (E.D. Cal. 2026); Anzor I. v. ICE Field Off. Dir., 2026 WL 787978, *3 (E.D. Cal. 2026) ("That Petitioner's detention by ICE occurred immediately upon his release from criminal detention . . . amplifies the significance of his liberty interest.").

Petitioner had no opportunity to respond to the reasons for her detention, her re-detention violated her due process rights under the Fifth Amendment to the United States Constitution. Therefore, the Court finds that Petitioner is in custody in violation of the Constitution of the United States."). And "[b]ecause Petitioner's deprivation of liberty without due process has been unlawful from its inception, [his] immediate release is required."[3] Torres Ferrera, 2026 WL 776145 at *6; see also Martinez, 821 F. Supp. 3d at 1196 ("Petitioner's release from custody is the appropriate remedy" since among other things, "Petitioner continues to suffer irreparable harm so long as she remains unlawfully re-detained"); Ordonez, 2026 WL 1630411 at *4 ("As has been found in countless similar cases in this Circuit, the appropriate remedy . . . is to order Petitioners placed in the position they would have been absent the due process violation — that is, they should be released from custody on the conditions that were initially imposed."); Movsesyan v. Bondi, 2026 WL 712824, *2-5 (C.D.

---

[3] In so concluding, the Court rejects Respondents' conclusory assertion that the Petition is "defective" because Petitioner has failed to exhaust his administrative remedies by requesting a bond hearing before the Immigration Court. (See Response at 2-3). As other courts have noted, "pursuit of administrative remedies would be inadequate and futile" and should be waived under the circumstances presented here since a "post-deprivation bond hearing . . . would not address the propriety of Petitioner's claim that he was not afforded constitutionally adequate procedural safeguards prior to the deprivation of his liberty interest." R.N.G. v. Semaia, __ F. Supp. 3d __, 2026 WL 2089544, *3 (C.D. Cal. 2026) (emphasis in original); see also E.A. T.-B., 795 F. Supp. 3d at 1324 ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty. Accordingly, given the inadequacy of available administrative remedies to redress Petitioner's irreparable harm, the Court finds it appropriate to waive any prudential exhaustion requirement." (citations omitted)).

Cal. 2026) (ordering "Petitioner's immediate release, and prevent[ing] Respondents from re-detaining Petitioner without notice and an opportunity to be heard" when Petitioner had "shown that his re-detention without any notice or an opportunity to be heard violates procedural due process"); Ovikian v. Noem, 2026 WL 391431, *4 (C.D. Cal. 2026) ("Providing Petitioner an interview *ex post* facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. . . . The only appropriate remedy is to release Petitioner and enjoin his re-detention, unless and until he is provided due process measures with respect to the revocation of his [Order of Supervision]." (italics in original)); Juan v. Noem, 2026 WL 607714, *3 (W.D. Wash. 2026) ("The appropriate remedy for the violation of Petitioner's constitutional rights is release.").

## IV.
## ORDER

Accordingly, it is hereby ORDERED that the Petition (Dkt. No. 1) is **GRANTED**. Respondents shall immediately release Petitioner (A# 240-507-781) from immigration custody subject to the conditions of Petitioner's most recent order of supervision, if any, and without the imposition of any new or further restraints, such as reporting requirements, GPS, or electronic monitoring. Respondents are also enjoined from re-detaining Petitioner absent strict compliance with the requirements of due process and all applicable statutes and regulations.

Additionally, the Court ORDERS that Respondents shall file a declaration by no later than 5:00 p.m. on August 19, 2026, confirming Petitioner has been released from custody. IT IS SO ORDERED.

DATED: August 17, 2026

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE